May it please the Court, Kristen Chapman on behalf of Appellant Alexander Pennelli, I would like to reserve four minutes for rebuttal. The central legal error in this case is the District Court's dismissal of Mr. Pennelli's straightforward false advertising claim based on a legal rule that this Court has never adopted. The District Court misread Moore v. Trader Joe's to mean that physically impossible advertising claims can never mislead a reasonable consumer as a matter of law, but that is not what Trader Joe's held and California law recognizes no such rule. And for good reason. Under the District Court's approach, the more brazen the falsehood, the more immune from liability the advertiser becomes. As the State of California explained in its amicus brief, that is not and cannot be the law in California. What Trader Joe's actually held was much more narrow than how the District Court interpreted it. In Trader Joe's, this Court looked at context-specific inferences that were available to the consumer at the time of purchase to inform whether a reasonable consumer would be misled by the accurate but ambiguous label in that case. One of three contextual inferences this Court looked at was impossibility. The impossibility there was relevant because it was common sense. This Court reasoned that consumers generally know that you can't control where bees forage down to a single flower source, and a consumer would not interpret a label to promise something that's impossible to find, and in that case it was honey from a single flower source. The District Court in this case took that narrow, context-specific inference of impossibility to stand for an independent legal rule, but it is not. The Court in Trader Joe's did not create a blanket rule that physical impossibility defeats false advertising claims as a matter of law. Additionally... Counsel, isn't there a more charitable way of reading the District Court's ruling as more in line with what Moore held, that a reasonable consumer of bedsheets who would care about the threat counts would know that it would be impossible and therefore the claim of falsity couldn't be raised? No, Your Honor, and for two reasons. First, the allegation in Mr. Pennelly's complaint regarding impossibility, he did not allege that the physical impossibility of having 100% cotton sheets with a threat count of 600 or higher is something that reasonable consumers know. Mr. Pennelly alleged that threat count is directly tied to higher quality, which in turn is tied to higher prices, and reasonable consumers rely on threat count representations when making purchases. Mr. Pennelly's own experience making the purchase reinforces that. He alleges that he would not have purchased his 800 threat count sheets if he had known that the true threat count was 288 or he would have paid much less. The District Court's analysis did not engage in any fact-finding about whether reasonable consumers know about the physical impossibility that Mr. Pennelly alleged. And to the extent that's debatable, it goes to it being a question of fact, which is why dismissal on the pleadings and false advertising cases is so rare. Now, going to the other point you raised, Your Honor, about whether a reasonable consumer would have a duty to research a characteristic they care about. Now, Target argues that that should be the rule, but that is not what this court has ever held or what any California court of appeal has held. In Trader Joe's, the court was dealing with a specialty niche product of Manuka honey, and the court held, this court clarified in Whiteside, that Trader Joe's makes clear reasonable consumers of everyday goods, like the bed sheets in this case, are not required to study labels with the same care that a reasonable consumer of a specialty product might. The heightened reasonable consumer standard that Target advocates for also contradicts Whiteside's affirmance of this court's holding in Williams v. Gerber, that consumers are not required to look beyond a misleading front label to elsewhere on the product. And here... Counsel, can I interrupt you for a second? You had mentioned for specialty products that there may be room for a reasonable consumer to do research in order to determine the truth or falsity of the claim. How do we distinguish between a product that is a specialty product and a product that is not a specialty product? Do we really want to go down this road? Yes, Your Honor. And I think we must, and I think Trader Joe's makes it clear. Manuka, and I think common sense informs it. Manuka honey in Trader Joe's was a niche specialty product. One example is Brady v. Bayer Corporation, a California court of appeal case where the court was analyzing the one-a-day brand for vitamin gummies. And the court there said, this is an everyday consumer item. Consumers are not required to look beyond the front label that makes a clear representation that it's one-a-day when the back label reveals that it's two-a-day. And Your Honor, I would... Apologies if my characterization regarding specialty products was not clear. I didn't mean to suggest that under Trader Joe's, reasonable consumers of specialty products have to engage in off-label research. Trader Joe's did not hold that. In Trader Joe's, it was knowledge that was known to reasonable consumers of specialty products and was contextual inferences available from the product itself. Here with ThreadCount, the label, ThreadCount is a specific, defined, objective characteristic of Threadsheets. To, even if there was some argument that it was ambiguous, there's nothing, none of the contextual inferences would contradict Mr. Pennelly's interpretation of the label, which is to believe it's true. This is not a, oh, excuse me. No, counsel, I do want to ask you about that. Now that we're talking about the ThreadCount, one of the things that Target alleged was that Mr. Pennelly failed to adequately allege facts to support his claim that the product had 800 ThreadCount. My understanding is that there was a test used that was, I think, from 2003, but there'd been five new iterations of it since. Talk to me about that. Why doesn't this fail under 9b? Your Honor, Mr. Pennelly sufficiently alleged the testing allegations to this specific sheets that he purchased. The ASTM test method that is the globally accepted industry standard, the 2003 version and the 2023 version are both in the record. The Target submitted the 2023 version. If you compare them, there's no fundamental differences between the two. Target doesn't point out any. Under both, ThreadCount is calculated by yarns or threads per square inch. And the ASTM test method makes clear that threads are counted as a single unit, even if they're applied. One way that companies inflate ThreadCount is by counting the thread components, the filaments or the applied components, and then multiplying that by the number of threads to reach these higher numbers. In the 2005 FTC letter that Mr. Pennelly attaches to his complaint, it makes clear that the FTC thinks that would be misleading. The FTC in that letter recommends that if you had 300 thread count and the one of the threads, one of the sides was two-ply, an accurate way to convey that would be 300 by two-ply. But if you called that 600 thread count, that was likely to deceive the consumer. Did the label indicate in this case what method was being used to count the threads? I don't believe so, Your Honor. I think it said 800 thread count. And the ASTM test method allows for different techniques to count threads, whether you can use different tools or cut a square inch and then unravel it. But it's clear that ThreadCount means the vertical yarns by the horizontal yarns in one square inch and a yarn or thread is a single unit. So are you alleging or standing by the fact that you believe Mr. Pennelly alleged the who, what, where, why sufficiently? It's my understanding reading through all of the information here that Target says, we were never really put on notice. We didn't know who did the testing. We were promised the results of the test and we never received anything. So what's your response to that? Yes, Your Honor. Mr. Pennelly alleged sufficient information to put Target on notice. He alleged the test method that was used, the ASTM method. He alleged the equipment that was used by the expert, the Traverse Thread Counter. He explained the results, 168 by 220 to reach the 288 thread count. He alleged the year and the month, January 2024, at a lab in the U.S. In one of the district court cases that dealt with ThreadCount, Thomas versus Walmart, the district court there dealt with a similar argument and said the identity of the tester or the identity of the lab doesn't make it any more plausible. Either the testing occurred or it didn't. And Mr. Pennelly has alleged it occurred and he has provided sufficient information for Target to be aware of the allegations against it. Additionally, in Thomas versus Walmart, the court there talked about the extensive allegations that were made about testing. But if you look at what's quoted in the decision and if you look at the complaint in that case, it's essentially what Mr. Pennelly alleged. There, the plaintiff discussed the ASTM method, which is what his expert used. And that's what Mr. Pennelly has done here. It's unclear what additional information, aside from perhaps the name of the lab, that Target would receive in any report. And at this stage, Mr. Pennelly is not required to provide that information. He's just required to plausibly allege his claim and he has done so. And to be clear, counsel, the district court didn't reach those issues, right? All the district court held was that a factual impossibility that has been alleged would negate a claim under the CLRA. That's correct, Your Honor. The court's analysis began and ended with its misinterpretation of Moore versus Trader Joe's. So it did not reach any other issues. You want to reserve the rest of your time? Yes, Your Honor, I will. Thank you. Good morning, Your Honors. My name is Grant Ancrum. I represent Appellee Target Corporation. Appellant attempts to paint the district court's order as broad and far-reaching. The reality, however, is that the district court simply dismissed a wholly deficient complaint based on Appellee's own factually unsupported allegations and contradictory allegations. To understand that, you have to step back and look at exactly what plaintiffs are alleging. They're not alleging that just one thread or one sheet is misrepresented, the one that they tested. They're alleging that every 600 that count or more, 600, 700, 800 thread counts of 100 percent cotton sheets are falsely advertised. In other words, everyone in the industry, regardless of manufacturer, regardless of type of cotton used, regardless of weave, is misrepresenting its thread count if they're saying it's more than 600. To support this, plaintiff has two paragraphs in this complaint. The first one is the testing allegation paragraph. In that paragraph, plaintiff summarily alleges that independent testing confirmed that the thread count on the sheets the plaintiff purchased was 288. The plaintiff did not identify the person, lab, or individual that conducted that  testing. That's one issue. They didn't attach the report or attach any sort of depiction of how these threads were counted or of the sample that was used. And they didn't provide any other information about how the ASTM methodology was actually applied in this particular case. The only thing they did was attach a 20-year-old ASTM standard cut out of a book. They did this despite repeated attempts from Target to request additional information relating to this testing. We had filed two motions to dismiss. They had said they were going to amend and add additional... Counsel, I'm sorry to interrupt, but that's not an issue we need to reach here, right? Because the district court never reached those issues itself. We're a court of review, not a court of first view, generally. Your Honor, I would say that for two reasons this should be considered here. The first is because it provides the context of how the judge got to Moore and the Moore decision. And I'll get to that here in just a second. And the second is that this court can affirm on any grounds the district court's decision. You don't have to affirm necessarily on the court's reasoning. So another ground that we briefed in our opinion is that this complaint lacks any factual allegations to plausibly support their claims. They've got these test conclusory results, but don't provide Target with any information about how they actually got to 288. I mean, aren't you veering into questions of fact, like whether in fact Target is representing that it's selling 800 thread count cotton sheets and in fact they are 800 thread count by some other test? I mean, I have the same problem with this case as I did with the first case. It's like, put in your answer, show that this test is inaccurate or they tested the wrong sheet or that by Target's testing it is 600. So, Your Honor, I would say that this court has always held that you have to at least allege facts to plausibly state a claim. And to compare it to the case that you just spoke about, it would be as if in the prior case they alleged that the product contained malic acid, but didn't show anywhere, didn't point to the back of the product label and show that it actually contains malic acid. It was just a summary conclusion that take our word for it, this product contains malic acid. That's what plaintiffs are doing here. Their entire test result is, take our word for it, it's 288 thread count. It's not, here's how we got to this. It's not like these other thread count cases where they attach a picture or a depiction of how they got there. It's, hey, we had this tested, 288, we're good. And that's the primary argument that they take forth in their brief is like, look, Your Honor, we don't have to do anything. These complaints shouldn't be dismissed ever at the pleading stage. We pled 288 and that's it. But that's just a conclusion. And then the only other thing that they have to support their claim, that everyone in the industry that is selling 600 plus thread count sheets is misleading consumers, is a statement that's made upon information and belief that it's impossible to have a 600 plus thread count. And they cite a couple of media excerpts that they say support this, but those, when you read them, they don't actually support this claim. So it's with this context, these two very minimal allegations. Counselor Mead, sorry, I want to bring you back to that. So I understand you said, look, they don't identify who ran the test. They don't attach the report. They don't really explain what methodology was used. If they did all that, would we be in a different position here? Potentially, Your Honor. But the issue is, is that there's a reason that they have not done this. We've asked them multiple times. And it's because there's a methodology that is being applied here. Look, Target has ASTM testing, ASTM methodology testing that confirms the 800 thread count. And the reason we've requested it so often, like give us more details, is because we simply cannot understand how they got to 288. So if they had alleged a actual possible... That question for discovery, right? After the motion to dismiss stage, and then you would have summary judgment hearings on it and then go to trial, potentially. That all seems, going to Judge Wardlaw's question, a question of fact. Again, I think, Your Honor, there can be questions of fact, but there's also a pleading threshold, a standard that you have to put the party on notice of what your allegation is, of how you actually allege that they're representative. So, Counselor, the reason I was asking that question is if you were going to say, well, yeah, Your Honor, we'd be in a different position. It's like, well, then why don't we allow them to amend their complaint so that they can do that? Yeah. On the amendment piece, Your Honor, I mean, there's two reasons. The first is they have had multiple opportunities. They've told us they're going to do it. They didn't do it. They refused to do it. They have stood on this repeatedly to the detriment of Target having to brief this multiple times and without, with the same result that we told them was going to be the case at the very beginning. And the other reason, Your Honor, is because it isn't, it's a futile effort at this point, demonstrated by their refusal to do it before. There isn't a testing methodology that is a, an actual testing methodology that is going to result in 288 threat count on Target sheets. Counsel, can we return to the district court's reason for dismissing this case? So I'm looking at the decision and the district court judge says, defendant argues that plaintiff's claims fail because if the court accepts plaintiff's allegations as true, that it is physically impossible for cotton fabric to have a threat count of 600 or more, then no reasonable consumer could be deceived by the representations at issue. Court agrees with defendant. Now that seems quite a categorical statement. Every time a plaintiff alleges that a claim is factually impossible, they have no, they can't bring a claim of fraud. And that seems wrong to me because false claims are to some degree or another impossible, right? If I promise to sell you a Buick Skylar convertible, right, for $10,000 and you pay me $10,000 and I say, I'm not going to give it to you because I don't have it. I'm sorry. You can't sue me for fraud. You, because my argument, according to the district court's logic, is that it's impossible for me to give you the car because I don't have it. It's a physically impossible claim, but it's still fraud. So help me square the circle here. I don't quite understand what the district court, I do understand, I think what the district court is saying. And if I, my understanding is correct, it seems flat out wrong. So great questions, Your Honor. Well, how do you square that to add on to his question with Moore versus Trader Joe's very contextual analysis? Yeah, so great questions. Target is not continuing, I don't think the district court's order is intended to say that you can never sue on a literally false statement. If you say no sugars and the product contains sugars, that is actionable. The issue here, and I think where the district court was going with this, is that if you have two plausible interpretations, strike that, not plausible, you have two competing interpretations of a term, 800 thread count using plaintiff's unspecified methodology. And this is why the methodology is important. Plaintiff's unspecified methodology versus a methodology, unspecified methodology where it's, they claim, impossible to get 600 thread counts versus a methodology that it is and that the industry is using for all these 600 thread count sheets to, and you have those two things, then a reasonable consumer is not going to assume what the product is saying is something that's impossible to achieve. In other words, a reasonable consumer is not going to choose the methodology that there's no way to get to 600 thread count when there is a methodology, one that, again, the industry across the board is using, that does show a 600 thread count sheet. And that's where the impossibility comes in, it's when you have these two competing potential interpretations, reasonable consumer is not going to assume the impossible. And, Counsel, can you respond to Judge Wardlaw's question? How, I mean, it seems to me Moore is eminently distinguishable because in Moore, there was an allegation, or at least the court found that there, to be an allegation, that a reasonable consumer would know that the representation was physically impossible, factually impossible. Here, I don't see an allegation here. I see it here in the complaint. The complaint just says, you know, Pennelly bought the bed sheets thinking that it would have 600 or more counts of thread, but in fact it had 288, and also it would have been impossible for the bed sheets to have more than 600. Ah, yes, Your Honor, and Moore's very well-reasoned opinion, and it does rely on those contextual factors. And it's interesting here because the issue is that it's the interpretation that's being offered. The reasonable consumer doesn't have that knowledge to even get to what the plaintiffs are alleging. We don't know exactly how their testing methodology is being applied, but they are alleging that a reasonable consumer has a very specific expectation that this particular methodology, the one that they don't tell us about, is being applied. And that... I think what they're really alleging, because I sort of relate to this, is that the reasonable consumer has a basic understanding that the higher the thread count in a cotton sheet or a cotton towel or any of these things, the higher quality the sheet is, and therefore that justifies paying a higher price. And so I would imagine, you know, in discovery in this case, one, I think Target may be able to demonstrate with its own testing that it, in fact, has, I don't know, 800, 600-plus thread count, or that, in fact, there's not a higher price for the 600 thread. I mean, there's so many different ways, I see so many different defenses that you would have, but that doesn't make this complaint not plausible. Because the reasonable consumer, I think, basically does have that assumption that the higher the thread count, the more expensive and better quality the sheet will be. I agree, Your Honor, that stepping back without getting into discovery and consumer perceptions or whatever, sure, that is an appealing argument. And that gets us back, it brings it all back to they still have a plausible, they have a duty to allege that we don't plausibly have that 800 thread count. I agree 800 thread count is a way to measure quality, no doubt about it. But everyone in the industry is selling 600-plus thread counts, and they're challenging every single one of those. It's a comparative factor, right? So they're challenging every single one, saying everyone's lying. If it's a comparative factor and everyone's lying, then everyone's telling the truth. But then you go back and you look at what they've pled in terms of what their test results actually, how they got to their test results of 288, and there's nothing there, absolutely nothing to support what they're conclusively alleging. And that's, we had a test and it's 288, take our word for it. I see your point. Thank you. Thank you, Your Honor. Just a few points to make in rebuttal. I think Your Honor is correct. The district court's categorical rule is just wrong in this case. The target repeatedly said that the testing was unspecified. That is not true. The ASTM method is what Mr. Pennelly alleged his expert used. He attached it to the report, or to the complaint, as we've discussed. The 2003 is fundamentally similar to the 2023. Did Mr. Pennelly provide them with the report from the expert? No, Your Honor. But again, the report based, so there are two other district court cases, Lancaster and Bruno, where in one it's an excerpt of a report and in one they actually attach the report. The report there doesn't actually reveal that much more information. It has the name of the lab, which Mr. Pennelly has just said it's a lab in the U.S. But there it just says ASTM method. It doesn't say what tool the expert used. It doesn't name the expert. Here, Mr. Pennelly has alleged that his expert used the Traverse Thread Counter, so it provides more information. And there it says the end and the pick count and the total true thread count, which is what Mr. Pennelly has alleged here. In those cases, the report says a hypothesis on how they believe the company reached the inflated thread count, but that's not required at this stage. Mr. Pennelly has sufficiently alleged the method that his expert used to test the thread count. Your Honor, additionally, Target essentially agrees that reasonable consumers do not know it is physically impossible to achieve a thread count of 600 or higher. But how do we know that? I mean, the thing is, your paragraph 24 says, on information and belief, any marketing or advertising of 100% cotton bed sheets consisting of a thread count of 600 or higher is false and misleading. That's on information and belief. Is that plausible when everybody in the industry is... I mean, I've seen 1,200 thread count things for sale, like at Neiman Marcus, and I'm going to assume they're higher quality and that justifies the price. But what's the basis for that statement? Yes, your Honor. And as this Court has held, plaintiffs can plead allegations on information and belief if the belief is supported by factual allegations that make the inference of culpability plausible. And Mr. Pennelly has done that. He has multiple independent sources. The textile expert at Consumer Reports says the sweet spot for thread count is 400. The CEO of a luxury linen provider says, depending on the type of cotton used, that number, referring to thread count, is generally not more than 400. And a bedding manufacturer that says, when it comes to bed linen, 400 threads per square inch is about all that will fit into the space. Is your answer to me that you've plausibly alleged that, that it is a question of fact that has to go beyond the motion to dismiss stage? That's correct, your Honor. We have plausibly alleged that it's physically impossible to achieve. Target will dispute that, which I think also underscores why this is not something that reasonable consumers know and that it would dissuade a reasonable consumer from Mr. Pennelly's interpretation of the label, which is to believe that the label is true. And if this Court has any misgivings or believes that Mr. Pennelly's allegations are deficient in any way, the remedy here is not affirmance. It's to reverse the district court's denial of leave to amend and give Mr. Pennelly the chance to amend his complaint. He can add additional allegations about testing of unpurchased products, allegations regarding what reasonable consumers know. At this stage, amendment is not futile. Mr. Pennelly has amended his complaint once, but it was not in response to a court order. It was just following removal of the case. So he should be given, at the very minimum, a chance to amend his complaint. But again, as the complaint is currently pled, he has sufficiently alleged his straightforward, literally false advertising claims. Thank you, counsel. Thank you, your Honor. Pennelly versus Target Corporation is submitted, and we will take up Brown versus Rita products.
judges: WARDLAW, ALBA, TUNG